IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| JAMIN FLEMING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 08-2184-STA |
| | ) |
| ROBERT M. STIFOLTER and | ) |
| JAMES WILLIAMS, | ) |
| | ) |
| Defendants. | ) |

_____

**ORDER GRANTING DEFENDANT JAMES WILLIAMS' MOTION FOR SUMMARY JUDGMENT**
_____

Before the Court is Defendant James Williams' ("Williams") Motion for Summary Judgment (D.E. #40) filed on January 21, 2009. Plaintiff Jamin Fleming and Defendant Robert Stifolter have responded in opposition to Williams' Motion. Williams has filed a reply brief (D.E. # 67), and Plaintiff has filed a sur-reply brief (D.E. # 75). For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

The Court has jurisdiction over this matter by virtue of the diversity of citizenship of the parties. The following facts are not in dispute for purposes of this Motion unless otherwise noted. According to Williams, this case arises out of an accident that occurred on August 7, 2007 at Greer's Ferry Lake in the state of Arkansas. Def.'s Statement of Facts 1. On that date, Defendants, Plaintiff and several other individuals were out on the lake in a boat and also had a

1

jet ski owned by Williams with them. *Id.* At some point during the day, Plaintiff and Defendant Robert Stifolter ("Stifolter") rode the jet ski and left sight of the boat. *Id.* Plaintiff was thrown from the jet ski and suffered serious injuries to his head. *Id.* According to Williams, Plaintiff was driving the jet ski when Williams last saw the men. Once they were outside of Williams' presence, Plaintiff and Stifolter changed positions on the jet ski at some point prior to the accident. *Id.* at ¶ 3. The driver "switch" on the jet ski occurred after Plaintiff and Stifolter were away from the boat in a different cove. *Id.* Both Plaintiff and Stifolter dispute these statements, and Plaintiff argues that Stifolter was actually driving the jet ski when Plaintiff and Stifolter left the area where Williams was.

Plaintiff admits that he operated the jet ski with Williams' permission. *Id.* at ¶ 1. However, Williams contends that he never gave Stifolter permission to use the jet ski. *Id.* at ¶ 2. Both Plaintiff and Stifolter dispute this, and Plaintiff contends that Stifolter had used the jet ski several times during the weekend trip prior to the accident. According to Williams, Plaintiff and Stifolter were using the jet ski on the date of the subject incident for their own amusement and not on the business of Mr. Williams. *Id.* at ¶ 4. Stifolter and Plaintiff testified that the only reason they took the jet ski out was for their own pleasure. *Id.*

Plaintiff has attached his own version of disputed facts to the Motion. Although this practice does not comply with the Local Rules, Plaintiff has set out additional facts which were not included in Williams' brief statement of facts.[1] On the day before the accident, after

---

[1] Local Rule 7.2(d)(3) provides

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied. . . shall respond to the proponent's numbered designations, using corresponding serial numbering, both in the response

dropping anchor, "pretty much everyone" in the group took turns operating and riding Williams' jet ski. Pl.'s Statement of Disputed Facts ¶ 3. Williams testified that on the Saturday before the accident, the only person that he knows for sure did not operate his jet ski was his niece. *Id*. Williams could not recall whether Stifolter operated the jet ski that day or not. *Id*. In fact, if there were testimony that Stifolter had used the jet ski that day, Williams admitted that he would not have any reason to dispute it. *Id*. Williams never told Stifolter or anyone else during the weekend trip that they could not operate his jet ski. *Id*. at ¶ 4. According to Plaintiff, "whoever wanted to ride it got on and rode it." *Id*. Williams admitted that he put no restrictions on the use of his jet ski. *Id*. At no time during the weekend did Williams ever ask anyone using his jet ski where they were going, what they were going to do, or who would be driving it. *Id*. at ¶ 8. He further admits that he never gave Stifolter any reason to believe that he did not have permission to operate his jet ski. *Id*.

On the day of the accident, after finding a suitable place to stop and anchor, Plaintiff and Williams entered the water and were in the process of insuring that the boat was properly anchored so that it would not drift into the rocks. *Id*. at ¶ 6. While Plaintiff and Williams were in the water, Stifolter got on Williams' jet ski and drove it out of the cove where they had anchored. *Id*. In the process of driving out of the cove, Stifolter was so close to Plaintiff and Williams that he sprayed Plaintiff with "jet wash" from the jet ski. *Id*. at ¶ 7. Stifolter continued

---

> and by attaching to the response, the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designate material facts are at issue.

The Local Rule does not contemplate that the non-moving party would respond with its own statement of "disputed facts."

to ride the jet ski alone for twenty to thirty minutes before he returned to the cove and told Plaintiff to "come on and ride with me, I've got to show you something." *Id*. Plaintiff then got onto the back of the jet ski driven by Stifolter and left the cove. *Id*. at ¶ 8.

Within twenty to thirty minutes of Plaintiff and Stifolter leaving the cove, Stifolter was driving the jet ski at a speed of over 60 mph and made a sharp turn. *Id*. at ¶ 9. Stifolter's negligent driving of the jet ski caused both he and Plaintiff to be thrown from the watercraft. *Id*. After the accident occurred, Stifolter assisted Plaintiff onto the back of the jet ski and drove back to the anchored boat. *Id*. at ¶ 10. Plaintiff got off the wave runner and into the boat. *Id*. Stifolter asked Williams if he could "continue to ride," even though everyone on the boat was made aware of the jet ski accident. *Id*. at ¶ 11. According to Stifolter and Williams, there was no objection to Stifolter's continued operation of the jet ski. *Id*. After the accident, Williams continued to allow Stifolter to operate his jet ski. *Id*. at ¶ 13. In fact, he allowed him to operate it all the way back to the marina. *Id*.

Williams admits that prior to this weekend trip, he had never met or seen Stifolter. *Id*. at ¶ 14. Williams did not know whether Stifolter knew how to ride a jet ski. *Id*. Williams had never seen Stifolter operate a jet ski. *Id*. The only thing that Williams recalls saying to Stifolter about Stifolter's use of his jet ski was after the accident when he asked, "Are you comfortable riding it?" *Id*. at ¶ 16. According to Stifolter, neither Williams nor anyone else ever gave him instruction on riding Williams' jet ski. *Id*. at ¶ 17. Furthermore, Williams never asked Stifolter anything about his intended use of the jet ski. *Id*.

Stifolter testified that Williams' jet ski was the "biggest, fastest one of the year." *Id*. at ¶ 18. Stifolter admits that he has never held a boater's license, never obtained a boater's operation

certificate, never taken a boat or water safety class, never received any instruction on how to operate a personal watercraft, and never owned any watercraft. *Id*. at ¶ 19. Stifolter further admits that he had not operated a wave runner for over 15 years before this accident and that he had never driven a wave runner like the one owned by Williams. *Id*.

Williams argues in his Motion for Summary Judgment that he cannot be held vicariously liable for Plaintiff's injuries resulting from the use of Williams' jet ski. Williams has briefed the applicable law from Tennessee. Both Plaintiff and Stifolter argue that Arkansas law should apply under choice of law principles. Nevertheless, Williams contends that Plaintiff cannot establish vicarious liability under an agency theory, the doctrine of respondeat superior, or the family purpose doctrine. The doctrine of imputed negligence under Tenn. Code Ann. § 55-10-311 is also inapposite to the facts of this case. Therefore, according to Williams, Plaintiff cannot prove that Williams is liable to Plaintiff for his injuries relating to the use of Williams' jet ski.

Plaintiff has responded in opposition to Williams' Motion. Plaintiff argues that the legal theories briefed in Williams' memorandum are not the theories of recovery Plaintiff asserted in his Complaint. Plaintiff contends that his cause of action against Williams is for negligent entrustment and negligent supervision. Plaintiff further argues that Arkansas law should govern in this case because the accident and the injury took place in Arkansas. Plaintiff also asserts that there is a material dispute of fact about whether Stifolter had Williams' permission to use the jet ski. Plaintiff argues that Stifolter had implied permission to operate the jet ski prior to the accident in light of the fact that Stifolter had operated the jet ski in Williams' presence. Williams admitted in his deposition testimony that everyone except his niece and possibly Stifolter had driven the jet ski on the day before the accident. Williams testified that he put no

5

restrictions on the use of the jet ski on the day before the accident. Additionally, Williams gave Stifolter express permission to ride the jet ski after the accident.

Plaintiff also argues that a material issue of fact remains which would preclude summary judgment. Both Williams and Stifolter testified during depositions that Plaintiff was driving the jet ski with Stifolter as a passenger when Plaintiff drove into a cove hidden from Williams' view. Both Defendants assert that Stifolter and Plaintiff switched places without Williams' knowledge and just before the accident occurred. Plaintiff, however, testified that Stifolter was driving the jet ski in Williams' presence and at all times immediately leading up to the accident.

Finally, Plaintiff argues that he has adduced sufficient evidence to demonstrate all of the elements of negligent entrustment and negligent supervision under Arkansas law. Stifolter was inexperienced in the use of a jet ski and possessed no licenses or training on watercraft prior to the accident. Williams should have known of Stifolter's inexperience prior to permitting him to use the jet ski. Williams entrusted the jet ski to Stifolter any way and created a risk of harm to Plaintiff. Williams' negligence was the proximate cause of the harm to Plaintiff. For these reasons, Plaintiff contends that Williams' Motion should be denied.

Stifolter has filed a separate response in opposition to Williams' Motion. Stifolter joins with Plaintiff in arguing that the substantive law of Arkansas should govern this case. Stifolter argues that Williams' Motion should be denied because Williams has briefed Tennessee law and fails to address the causes of action pled in Plaintiff's Complaint.

Williams has filed a reply brief in which he addresses the law of Arkansas raised in Plaintiff's response. Williams contends that both Defendants agree that Plaintiff was driving the jet ski when Plaintiff and Stifolter left Williams' sight just prior to the accident. Thus, Plaintiff

must prove that Williams negligently entrusted the jet ski to Plaintiff, not Stifolter. Williams argues that Plaintiff cannot make this showing because Williams had permitted Plaintiff to use Williams' watercraft for twenty (20) years prior to the accident. Williams cites his own deposition testimony in which he stated that Plaintiff was "very competent" driving a jet ski. From this Williams argues that no reasonable juror could conclude that Williams was negligent in entrusting the jet ski to Plaintiff. In the alternative, Williams contends that Plaintiff cannot show that Williams knew or had reason to know of Stifolter's "reckless proclivities."

Finally, in a sur-reply, Stifolter argues that deposition testimony of Plaintiff goes to show that Williams had entrusted the jet ski to Stifolter. Stifolter further alleges that Williams' failure to ask Stifolter about his prior experience with watercraft or offer any training on the jet ski creates a factual issue about whether Williams knew or had reason to know that Stifolter might be reckless and whether Williams thereby created an appreciable risk of harm to Plaintiff. Therefore, Stifolter asks that Williams' Motion be denied.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[2]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

---

[2] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

7

favorable to the nonmoving party.[3]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[4]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[5]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[7]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[9]  Finally, the "judge may not make credibility determinations or weigh the evidence."[10]  Under Federal Rule of

---

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Celotex*, 477 U.S. at 324.

[5] *Matsushita*, 475 U.S. at 586.

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id.* at 251-52 (1989).

[8] *Celotex*, 477 U.S. at 322.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[11]

## ANALYSIS

*I.    Arkansas Law Applies*

With respect to the claims in this case, the Court must determine whether the substantive law of Arkansas or Tennessee should apply. A federal district court sitting in diversity must apply the choice-of-law rules of the forum state.[12] Tennessee has adopted the *Restatement (Second) Conflict of Laws* approach.[13] The Tennessee Supreme Court has explained that under this approach, a court applies the "law of the state where the injury occurred ... unless, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and the parties."[14] Tennessee's most significant relationship approach requires that the Court evaluate the following contacts "according to their relative importance with respect to the particular issue": (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; (d) the place where the relationship, if any, between the parties is centered.[15]

---

[11] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[12] *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941).

[13] *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992).

[14] *Id*. (quoting *Restatement (Second), Conflict of Laws*, §§ 146 and 175).

[15] *Id*. (quoting *Restatement (Second), Conflict of Laws*, §§ 145(2)).

The Court holds that the substantive law of Arkansas should apply in this case. Here the accident and the resulting injury occurred in the state of Arkansas, meaning the first two factors favor the application of Arkansas law. As for the parties, Plaintiff is a citizen of Mississippi and Defendants are both residents of Tennessee. Thus, the third factor favors the application of Tennessee law but is not dispositive. Finally, it is undisputed that the parties associated as a group for the first time in order to engage in recreational water sports for a weekend in Arkansas. The parties had never associated as a group until that weekend in Arkansas, and so their relationship was centered in Arkansas. Therefore, the Court holds that the balance of the factors favors the application of Arkansas law.

Having determined that the substantive law of Arkansas should apply in this diversity case, the Court is bound to apply the substantive law of Arkansas as if the action had been brought in the courts of that state.[16] Under the *Erie* doctrine, a federal court must apply the law as it has been determined by the highest court of the state.[17] When the highest court of the state has not answered a particular question of law, the federal court must discern or predict how the state courts would respond if confronted with the question.[18] The federal court must ascertain from all available data what the law is and apply it.[19] In the absence of any indication that the

---

[16] *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007).

[17] *Gahafer v. Ford Motor Co.,* 328 F.3d 859, 861 (6th Cir. 2003).

[18] *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1365 (6th Cir. 1984); *Clutter v. Johns-Manville Sales Corp.,* 646 F.2d 1151, 1153 (6th Cir. 1981).

[19] *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601 (6th Cir. 1985).

state's highest court would adopt a rule contrary to the rule announced in an intermediate appellate court, a federal court is not free to ignore the announcement of a state appellate court on matters of state law.[20]

## II.     *Negligent Entrustment*

Under Arkansas law, in order to prevail on a claim of negligent entrustment, the plaintiff must prove that (1) the entrustee was incompetent, inexperienced or reckless; (2) the entrustor knew or had reason to know of the entrustee's condition or proclivities; (3) there was an entrustment of the chattel; (4) the entrustment created an appreciable risk of harm to the plaintiff and a relational duty on the part of the defendant; and (5) the harm to the plaintiff was proximately or legally caused by the negligence of the defendant.[21] The Arkansas Supreme Court observed twenty years ago that "[e]ntrustment cases, certainly the ones in Arkansas, generally have involved automobiles."[22] While this case involves watercraft in the form of a jet ski, the same principles of negligent entrustment apply.

The Court holds that as a matter of law, Plaintiff cannot adduce evidence from which a reasonable juror could conclude that the entrustee in this case was incompetent, inexperienced or

---

[20] *Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000).

[21] *Renfro v. Adkins*, 914 S.W.2d 306, 310 (Ark. 1996).

[22] *Arkansas Bank & Trust Co. v. Erwin*, 781 S.W.2d 21, 23 (Ark. 1989) (citing Woods, *Negligent Entrustment: Evaluation of a Frequently Overlooked Source of Additional Liability,* 20 Ark.L.Rev. 101 (1966)).

reckless. Plaintiff correctly argues that a question of fact remains about whether Williams entrusted the jet ski to Plaintiff or Stifolter. Williams has testified that Plaintiff was driving the jet ski when Williams last saw Plaintiff and Stifolter just prior to the accident. According to Williams, while Stifolter was driving the jet ski at the time of the accident, Stifolter did not have Williams' permission, either express or implied. On the other hand, Plaintiff has testified that Stifolter had driven the jet ski prior to the accident, was driving the jet ski when Williams last observed the men before the accident, was driving at the time of the accident, and continued driving it after the accident. Clearly, this presents a question of fact about to whom Williams had entrusted the jet ski.

Nevertheless, the Court finds that in either case, Plaintiff cannot establish his prima facie case of negligent entrustment, particularly the first element. Assuming for purposes of this Motion that Plaintiff's version of the facts are true, Williams entrusted the jet ski to Stifolter just prior to the accident. Plaintiff must adduce evidence to show that Stifolter was incompetent, inexperienced, or reckless. "If the person permitted to operate the [chattel] is known to be incompetent and incapable of properly running it, although not a child, the owner will be held accountable for the damage done, because his negligence in intrusting the [chattel] to an incompetent person is deemed to be the proximate cause of the damage."[23] This first element of the negligent entrustment claim is a *sine qua non*. According to the Arkansas Court of Appeals, this element must be established first and "[a]bsent evidence of the driver's incompetence as a driver before the accident, there could be no basis for" negligent entrustment.[24]

---

[23] *Sanders v. Walden,* 217 S.W.2d 357, 360 (Ark. 1949).

[24] *Ponder v. Gorman*, 227 S.W.3d 428, 430 (Ark. Ct. App. 2006).

The Arkansas courts have cited with approval the Restatement Second of Torts §§ 308 and 390 concerning negligent entrustment.[25] Section 390 specifically addresses the first element of the tort, whether the entrustee is incompetent, inexperienced, or reckless. That section states

> § 390. Chattel For Use By Person Known To Be Incompetent
>
> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.[26]

According to Comment b to § 390, one who supplies a chattel may not presume that the entrustee will use it safely if the entrustor has reason to know that the entrustee "lacks the training and experience necessary for such use."[27] Section 390 then provides the following illustration of the principle: "A permits B, a boy of ten, who has never previously driven a motor car, to drive his motor car on an errand of B's own. B drives the car carelessly, to the injury of C. A is subject to liability to C."[28] Likewise, Section 308 of the Restatement emphasizes that the kind of inexperience contemplated for negligent entrustment is typified by a minor who had never operated a vehicle before and, during her only occasion to operate a vehicle, caused an

---

[25] *Mills v. Crone*, 973 S.W.2d 828, 831-32 (Ark. Ct. App. 1998) ("Section 308 of the *Restatement (2d) of Torts* (1965), along with section 390, states the general rule for negligent-entrustment liability."). *See also Ponder*, 227 S.W.3d at 429; *Collins v. Morgan*, 211 S.W.3d 14, 20 (Ark. Ct. App. 2005).

[26] *Restatement (Second) of Torts* § 390 (1965).

[27] *Id.*, Comment b.

[28] *Id.*, Comment b, Illustration 2.

13

accident due to her inexperience and injured a third party.[29]  In each example, the Restatement characterizes the level of inexperience as a complete lack of prior experience in operating a machine or vehicle much a like a minor driving an automobile for the first time.

Applying the Restatement standard to Plaintiff's evidence in this case, the Courts finds that Stifolter was an experienced user for purposes of the first element.  Viewing the evidence in the light most favorable to Plaintiff, this was not Stifolter's first occasion to use a jet ski.  There is no evidence that Stifolter had not reached the age of majority.  Stifolter testified that he had operated jet skis on approximately twelve different occasions.[30]  Stifolter had not operated any watercraft for fifteen (15) years prior to the weekend of the accident and had never operated a jet ski as powerful as Williams' jet ski.  It cannot be said, though, that Stifolter was a novice who lacked "the training and experience necessary" to use a jet ski.  In fact, Plaintiff argues that Stifolter may have used the jet ski on the day before the accident and for some time on the day of the accident prior to the accident.  Thus, this is not a case where Stifolter had never used a jet ski or even the jet ski involved in the accident.  Plaintiff also argues that Stifolter had no license, certification, or other training in water safety and the safe operation of the jet ski.  However, there is no evidence that Arkansas required a licence or other certification to operate the vehicle

---

[29] *See Restatement (Second) of Torts* § 308 (1965), Comment b, Illustration 1 ("A permits B to drive his car.  B is a girl of 14 who, to A's knowledge, has never driven a car before.  B's inexperience causes a collision in which C is hurt.  A is negligent toward C.").

[30] Stifolter Depo. 21:10-17, July 22, 2008.  *See also Tillman ex rel. Migues v. Singletary*, 865 So.2d 350, 354 (Miss. 2003) (holding that no claim for negligent entrustment where the entrustee was twenty-five years old at the time of the accident and had prior experience driving power boats, sailboats, and john-boats but not the entrustor's boat).

at the time of the accident. Therefore, the Court concludes that Plaintiff has failed to adduce evidence from which a reasonable juror could find that Stifolter was an inexperienced jet ski user akin to a minor operating a vehicle for the first time.

In the absence of evidence that Stifolter was inexperienced, Plaintiff may produce evidence that Stifolter was incompetent or reckless. Here Plaintiff may come forward with proof of specific instances of Stifolter's incompetence or recklessness.[31] However, there is no evidence in the record that Stifolter was under the influence of any drugs or alcohol at the time of the accident which would have rendered him incompetent. Nor is there any evidence of prior instances of Stifolter operating a watercraft or any other vehicle in a reckless manner. In short, there is no evidence "of inebriation, prior accidents or moving violations, extreme youth, mental or physical disabilities, or reputation for same."[32] Therefore, the Court holds that Plaintiff has failed to prove the first element of negligent entrustment.

Even if Plaintiff could establish that Stifolter was incompetent, inexperienced, or reckless, Williams would still not be liable to Plaintiff for Stifolter's negligence. Section 390 of the Restatement goes on to provide that an entrustor is relieved of liability to "third persons injured by the improper use made of the chattel by the incompetent person" where

> third persons, knowing, or having reason to know, of his incompetence, associate themselves with him in the use of the chattel or unnecessarily come within the area made dangerous by the probability that he will misuse the chattel, or knowing that the chattel is in the hands of incompetent persons, fail to take those precautions which a reasonably

---

[31] *McClellan v. State*, 570 S.W.2d 278, 280 (Ark. 1978).

[32] *Russell v. Warshauer*, 2008 WL 2745123, *3 (Mass. Super. June 18, 2008).

careful man would deem necessary under the circumstances.[33]

The Restatement offers the following illustration of the principle

> A permits B, whom he knows to be an inexperienced driver, to use his car. B invites his friend C, who knows of his inexperience, to drive with him. B's inexperience leads him to drive in a way which is obviously improper. In so doing he collides with the carefully driven car of D. The collision results in harm to both B and C. While neither B nor C may recover against A, A is subject to liability to D.[34]

In other words, an entrustor is not liable to a third person who also knows about the entrustee's inexperience and yet joins in the use of the chattel with the entrustee any way.

In light of these Restatement principles, the Court holds that Williams cannot be liable to Plaintiff for injuries sustained as a result of Williams' negligent entrustment of the jet ski to Stifolter. Even if Plaintiff could adduce evidence that Stifolter was inexperienced as a jet ski user, the undisputed evidence also shows that Plaintiff knew or had reason to know of Stifolter's inexperience using watercraft like Williams' jet ski. Plaintiff was a friend of Stifolter and had invited Stifolter on a weekend trip to Greers Ferry, Arkansas, for the purpose of engaging in recreational water sports. Plaintiff actually picked Stifolter up and drove him to Arkansas.[35] Plaintiff was the only person in the party at the lake who knew Stifolter prior to that weekend. Neither Williams nor his family had ever met Stifolter prior to the trip. Plaintiff is forced to argue then that Williams should have known that Stifolter was inexperienced with jet skis at the same time that Plaintiff must deny that he had any knowledge of Stifolter's inexperience with jet

---

[33] *Id.*, Comment d.

[34] *Id.*, Comment d, Illustration 8.

[35] Fleming Depo. 26:18-22, Sept.17, 2008.

skis. And yet, it was Plaintiff who had invited Stifolter on the trip for the purpose of enjoying water sports like driving the jet ski. Indeed, the record indicates that Plaintiff was the only member of the boating party to ride on the jet ski while Stifolter was driving it.[36] For these reasons, the Court holds that Williams cannot be liable to Plaintiff.

Having concluded that Plaintiff cannot satisfy the first element of negligent entrustment under Arkansas law, the Court concludes that Plaintiff cannot make out his prima facie case as to this claim. Therefore, Williams is entitled to summary judgment as to Plaintiff's claim of negligent entrustment.

### III.    *Negligent Supervision*

Plaintiff's Complaint refers to his cause of action against Williams as one for "negligent entrustment-supervision." There does not appear to be a separate claim under Arkansas law for negligent supervision for situations such as the one presented in the case at bar. Indeed, Plaintiff has not cited any applicable Arkansas authority for such a cause of action. The Arkansas courts have recognized the tort of negligent supervision in the contexts of the parent-child

---

[36] *See also Alarcon v. Rasanow*, 2006 WL 3161066, *4-5 (Ohio Ct. App.  Nov. 6, 2006) ("Apparently, [the third party] did not consider [the entrustee] incompetent to operate the equipment regardless of his lack of experience, and her opinion did not change until the accident. Clearly the accident that occurred after the rental of the waverunner does not constitute incompetence of which [the entrustor] should have had knowledge at the time the rental occurred.")

relationship,[37] the employer-employee relationship,[38] child care,[39] medical facilities and their patients,[40] nursing home care,[41] and construction and improvements to real property.[42]  The Court is aware of no Arkansas authority, and Plaintiff has cited none, for a separate tort of negligent supervision in the context of bailor-bailee or in this case negligent entrustment.  To the extent then that Plaintiff has alleged a separate cause of action for negligent supervision against Williams, that claim is dismissed.

## CONCLUSION

Having held that Plaintiff has failed to make out a prima facie case of negligent entrustment against Defendant Williams, Williams' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

                                                 s/ S. Thomas Anderson
                                                 S. THOMAS ANDERSON
                                                 UNITED STATES DISTRICT JUDGE

                                                 Date: September 21st, 2009.

---

[37] *Bieker v. Owens,* 350 S.W.2d 522 (Ark. 1961)

[38] *Saine v. Comcast Cablevision of Arkansas, Inc.*, 126 S.W.3d 339, 342 (Ark. 2003).

[39] *Anderson v. Mitts,* 85 S.W.3d 154 (Ark. Ct. App. 2004).

[40] *Howard v. Ozark Guidance Center*, 930 S.W.2d 341, 342-43 (Ark. 1996).

[41] *Bailey v. Rose Care Center,* 817 S.W.2d 412 (Ark. 1991).

[42] *Frank A. Rogers & Co., Inc. v. Whitmore*, 629 S.W.2d 293, 293 (Ark. 1982).